May it please the court, Nolan Knight with Russell King at council table here on behalf of the appellants. Appellants respectfully request that her court reverse the lower court's semi-judgment ruling in favor of State Farm and render judgment in favor of appellants. The basis for this request for relief is that the lower court's ruling contravenes settled principles of Texas insurance law. Settled? Yes, your honor, and in fact, you, I suspect, may recall that you were on the panel of what I think is the dispositive Texas Supreme Court ruling in this case, Zurich America Insurance Company v. Nokia, where when asked whether or not Texas recognized any exceptions, any exceptions to the eight corners rule, the Texas Supreme Court responded by saying, although some other states, such as Maryland do, Texas has not. Not only has the Texas Supreme Court spoken authoritatively to the principles that control in this case, but it also happens that Judge Reveley, I offer humbly and without any presumption, was on an earlier panel of this court, which correctly predicted in 2004 what the Texas Supreme Court was going to do in 2008. Sometimes I'm wrong. I am not in a position to disagree, your honor, but in this case, I can assure you, you are not. In the Northfield Insurance Company case v. Loving Home Care, the earlier panel of the Fifth Circuit made clear Texas has recognized no exceptions to the eight corners rule and that it was unlikely that the Texas Supreme Court ever would. It has not since that time. You know that we have those unpublished cases since that time, and it seems to be that we tend to think that there might be some exceptions, that we keep having these cases crop up with possible exceptions. Should we settle this by sending this for a certified question? Your honor, we move in an abundance of caution for a certified question, but I can't leave do not think that it is appropriate. Because you think it's settled. If we disagree with you that it's, whether it's settled or not, should we sort of, do we have a responsibility to certify it? I understand why that might sound as if I'm talking out of both sides of my mouth, your honor. Yes, because the Texas Supreme Court had an opportunity in 2008 to once and for all fully aware of some of the inconsistent positions taken by lower intermediate courts in Texas and the positions taken by certain district courts within this system. Because the Texas Supreme Court had an opportunity, an invitation to once and for all say, you know what, point well taken, we are going to carve out an exception to the eight corners rule and here is what it is. But the Texas Supreme Court spoke authoritatively in saying there are no exceptions to the eight corners rule. If you lose on the eight corners rule, do you lose, do you agree that the exception talked about would apply? No, we would still prevail, your honor. Can you talk about that a little bit? Certainly. State Farm and the lower court for that matter have not correctly characterized the operation of the putative exception. The exception, in Northfields this is made clear, in Zurich this is made clear, is a two part conjunctive standard. Both of the conditions would have to be satisfied before extrinsic evidence would be admissible. The first criteria under that two part conjunctive standard is that it first must be impossible taking the facts as revered in underlying cause of action as true to conclude that there is the potential for coverage, not probability, not certainty, not more likely than not. Only that in looking at the facts, taking them as true, there is no potential for coverage. State Farm and the court below nor the district court ever have dealt with that first criteria under the conjunctive standard. With the court's indulgence, I would like to walk the court through why if engaging in an eight corners analysis, if you look at the only two permissible sources for assessing the potential for coverage, there was no genuine issue of material fact that appellants are entitled to summary judgment because there potentially is coverage. There are three provisions in the policy, the State Farm policy, that I think are controlling. The first is the definition of a coverage triggering occurrence. The second is that the State Farm policy expressly includes in coverage certain forms of motor vehicle operation and the third is the definition of insured. With respect to a coverage triggering occurrence, occurrence is defined at record site 590 as being quote, an accident which results in bodily injury. Two terms within that definition I think are imperative to understand here and I'll start in reverse order because this makes clear all that has to happen is some conduct that results in bodily injury. There is no proximity or temporal limitation placed upon this concept of an occurrence. The other key term is this notion of an accident, which is not a defined term within State Farm's policy but it is settled as a matter of Texas law that the term accident when used in a liability policy merely refers to conduct on behalf of the insured, which here would be intended to cause injury. What has been veered in the underlying petition in this matter, which again must be taken as true, is that the insured engaged in negligent conduct. There's no environment of intent nor malice. So at that most basic level, as to whether or not there had been facts that conduct without any intent to cause harm was alleged in the State Court petition, absolutely those facts have been veered. But the analysis continues, I think, with respect to the concept of motor vehicle operation. And what is critical in this case is that the State Farm policy, unlike all of the policies at issue in the cases that I candidly think State Farm inappropriately relied upon in the court below, which the court nonetheless adopted. The State Farm policy does not categorically exclude operations of a motor vehicle of any kind as being a basis for coverage. Instead, the policy makes clear that certain types of motor vehicle operations on or at  their property are not subject to coverage. So we have to consider the definition of occurrence in the way that the policy treats the concept of motor vehicle operation in concert. And when we do, the policy taken literally means that if from the standpoint of the Richards, they engage in conduct with respect to operation of a motor vehicle on or at their property, and that conduct resulted in bodily injury, we're within the scope of coverage. What have we alleged, or what did Ms. Mills allege in the State Court petition? That the Richards made certain decisions with respect to the operation of a motor vehicle on or at their property by allowing the deceased, Jade Mills, to board the all-terrain vehicle, by failing to have Jade Mills wear a helmet on the vehicle at the property, by failing to have Jade Mills, while at the property, wear a seat belt, by failing to ensure that Jade Mills, while at the property, was competent to operate the vehicle, so on and so forth. So the negligent act happened at the property, but the collision itself happened somewhere else? Although it's beyond the record, Your Honor, yes, the extrinsic evidence... So we don't know where the accident happened on the record, right? It doesn't say it. That's correct. So, yes. That's correct. So, we shouldn't consider where it happened. I agree. If we're going by this test. That's correct, Your Honor, because we are taking the facts as it appeared in the State Court petition as if they're true. But if we did, if we were to go beyond, because this is your backup argument now. Even then, I am with, the eight corners rule says no extrinsic evidence at all, but even within the exception, the exception as a first criteria says, there only has to be the potential that there's coverage. Any doubt is resolved in favor of the duty to defend. So there's potential coverage because the negligent act alleged occurred on the property? That's absolutely right, Your Honor, and that is the extent of the analysis that should appear under a strict, faithful application of the eight corners rule, or if we get into the exception that does not exist under Texas law, that is the first criteria with respect to the exception. But in neither respect has State Farm or the court honored the operation of the rule or the purported exception. In fact, State Farm's position, it seems to have been thus far and continues to be, State Farm is entitled to some type of special State Farm-like carve-out, whereby although the eight corners rule says there's no exceptions, we're going to rely upon extrinsic evidence. And although the putative exception to the eight corners rule still requires it to be impossible, taking as true the facts from the state court petition to potentially implicate coverage, that we should be allowed to introduce extrinsic evidence to raise doubt as to whether or not there is coverage when the rule established in Northfield, established in Zurich, is clear that in all cases of doubt, the issue is resolved in favor of the insured and the duty to defend. A similar mode of analysis applies with respect to, in fact, before I move on, there's one of the issues that I want to point out that I think is significant. Although this is a homeowner's policy of insurance, the particular coverage provisions that are outlined in Section 2 of the policy, which is a personal liability component of the policy. So back to your question, Judge Ayerrott, with respect to if the negligence occurred on the property, whether or not that makes it more likely than not that we fall within coverage, I think that is an additional consideration in addition to the actual terms of the policy, which make that clearly be the case, because the orientation of the coverage provision here relates to the conduct of the Richards. A similar mode of analysis applies with respect to the definition of insured. In the court below State Farm debated whether or not Jaden Mills was insured under the State Farm policy and therefore excluded from coverage. The definition of insured is found at record site 576, and there are two manners in which you can qualify as an insured under the policy. You either have to be named in declarations, Jaden Mills was not, or as a threshold qualifying criteria, you must have been a resident of the Richards household. In the state court petition, in no uncertain terms, Jaden Mills is veered to be a resident of the home of his maternal grandparents. The Richards, by contrast, are his paternal grandparents and reside at a different address. Here again, had State Farm and the lower court taken the veerments in the state court petition as true, those veerments established that there potentially was coverage. State Farm, however, introduced and the lower court accepted a stringent evidence to contradict the expressly veerments, which is impermissible. Does it matter that this policy does not include the language, all actions against its insured, no matter if the allegations are groundless, false or fraudulent that some of the other defendants in Zurich actually argued that the Texas Supreme Court should adopt the B declined. There constantly is no basis for an eerie guess that policy language would make any difference whatsoever with respect to the operation of the rule. For those reasons, we respectfully submit that the lower court erred and the appellants are entitled to summary judgment and I reserve my time for rebuttal. Thank you. Good morning. Theodore Schultz for Appallee. May it please the court. Your honors have already struck at the heart of this. This court has ruled repeatedly that it's already made the eerie guess that in fact, under Texas law, the Texas Supreme Court would be liable to adopt a rule that said that extrinsic evidence is permissible in cases of coverage disputes. What published case says that? Guide one says that one, your honor. It makes reference to that and that is where I believe the eerie guess comes from. The extrinsic evidence that would be permitted would be permitted only when it goes to a fundamental coverage issue and it does not touch the merits of the underlying suit. What do you do about the cases that say it should only go to an explicit exception to coverage? Not exception, it's not the right word. Exemption. So instead of it, the exception to the eight corners rule, if we have one, only applies when it's an explicit notation that there is no coverage if such and such. Well, we have two exclusions in this case. Exclusion, thank you. Which I think actually apply and so I'm not sure how it would differentiate anything in this particular case. Now, if you're asking would you have to have an explicit coverage issue, I don't think so. And the reason I don't think so is, let's assume that you had a policy definition that said this covers everybody in group A for particular sorts of loss. And then you had somebody who was not in group A. That's not an exclusion, that's a policy definition. But the effect would be the same thing. You're looking at something fundamental to the coverage. Does this policy apply here? But Evanston says extrinsic evidence is more likely to be considered when it's an explicit policy coverage exclusion clause. Yes, Your Honor. If there's an explicit exclusion, I think that it's much more likely, I think it's absolutely obvious that it's going to come in under the way this court has ruled. I can understand that it might be a more buried issue if it's in a policy definition of some sort. But I do think that here the policy is excluding coverage expressly in two ways. I guess ultimately- It's not an exclusion though. Which one is not an exclusion, ma'am? The idea that on the property, that's not an exclusion, is it? I think that it is. It says that it covers an AT- It's a definition, isn't it? I'm trying to think of the policy and envision it in my mind. It says that we cover automobile, we exclude automobiles, and in the auto it defines ATVs, all-terrain vehicle accidents, but it says that all-terrain vehicles on the property would be covered. It does not, but it excludes, at least by my reading of it, ATV accidents that take place off the property. That is, I think, the exclusion. That's how I read it, but, Your Honor, I don't have it in front of me and I don't want to say it wrong. The policies, I must confess, all tend to blur together after a time. But that being the case, the language that you cited a moment ago, Your Honor, strikes to, it says it is much more likely to be admissible, but it doesn't say that it would be inadmissible if it was a policy definition. And to the extent that there is this distinguished, that there is some place where that distinguishing characteristic would matter, I don't think it matters here. In this case, the extrinsic evidence shows that there isn't going to be coverage for this loss for two reasons. First of all, the decedent wasn't insured. Now, I understand that there is a, that he says, I'm sorry, that my opponent says that the decedent was a veered to live at one residence, but to be a member of a household in Texas, a minor can be, can have more than one residence. And in this case, we put forward evidence that shows that he was part of the insured definition. That is the whole point. The other aspect of this is, where did the accident take place? If our policy doesn't cover ATV accidents that take place off property, the fact that the ATV accident in this case took place off property, and but for that accident, there wouldn't be bodily injury or negligence. That's the test to determine where the negligence, where negligence occurred, where the bodily injury occurred. Getting away from that, what that would basically do is force State Farm to defend a case even though it can show that there's no, there's not going to be any indemnification under this policy. Counsel, I'm sorry, can you tell me again what case you say that the Fifth Circuit has affirmatively adopted the position in a published case? My understanding from the Star-Tex case, Your Honor, which is not published, I recognize. What published case have we, when have we ever in a published case said that we are saying that the Eight Corners rule has exceptions? My belief from Star-Tex is that it was citing the Guide 1 opinion. But that's not, that's Texas. No. Isn't it? Are you not doing the Texas Guide 1? No, I'm referring to the Fifth Circuit Guide 1, which is versus missionary. Missionary church case is what you're saying. I think that that's what Star-Tex cited. I also think it cited the North, did I get it right, the Northfield case from 2004. But the Texas Guide 1 case is the one that you cite as the Texas High Court having cited approvingly. Not just me, Your Honor, but yes, the Texas High Court, that is a case that I rely on. So sort of tacitly condoning the Northfield exception. Correct, Your Honor. In that case, it dealt with these issues and it has since been interpreted as being the court cited, the Texas Supreme Court cited with approval the idea of an exclusion and the cases therein. Do you believe it matters whether or not there's that policy language, the B Hall language? I think that that provides an alternate ground, but that is not the main basis of our argument. Is that what the district court relied on mainly? The district court mainly relied on that. The district court likes that opinion. He does because this is the second time he has made the argument. What I would say, though, is that in footnote three of the district court's opinion, he does make clear that he would also apply the same outcome to an eight corners rule analysis. But you're not asking us to uphold the B Hall reasoning here today, are you, sir? I am not, Your Honor. The reason that I am not at this point is that I don't think that it's necessary, nor do I think that it is squarely before the court. Is it right? I think that there is a policy argument to be made. Squarely, I think that it is right, but I can see why the argument would be much more shaded. Do you think Texas would follow the B Hall rule, which is the question we have to ask ourselves? I think that Texas would not follow the B Hall rule. Thank you, counsel, for your candor. I appreciate it. We get off the B Hall rule, then. Yes, Your Honor. I believe that the fundamental issue in this case is the narrow exception, as it's been described, to the eight corners rule. Why shouldn't we certify to make sure there is such an exception? As I understand the courts, the prior decisions of this court have said that it has already made the eerie guess, and it should not be that that is undone now by certifying it to the Texas Supreme Court. Why was it undone? I mean, if we're still guessing after all this time, at some point should we quit guessing? Absent a decision by the Texas Supreme Court which changes the law, I believe that there has been an eerie guess already made, and that there is no reason or basis to change it at this time. Well, when there's been a series of opinions in the Supreme Court that arguably could have relied upon it and didn't, that might give us some discomfort and say we better double-check this. I certainly understand the idea that there could be a reason why the court has not addressed that issue. I don't think that that means that there is enough to suddenly undo the prior decisions of an eerie guess of a panel. If that is the case, then there is no eerie jurisprudence, and what happens is that every case will be decided de novo. Do you believe that we are without authority to certify this question in this case because of that? Yes, Your Honor, I do, though I recognize that you always have the power, regardless of what my opinions are. And so your opinion that you say binds us is this Missionary Baptist case. Is that the binding case? I believe from Star Text that that is the case that was cited as binding. Right, because none of these other opinions bind us. I think that Northfield also binds us. But it doesn't say that in Northfield, does it? It says that it is predicted that the court would, if the court was going to address, if the court was going to adopt an exception, it would adopt this narrow exception. But we don't, but it doesn't then do that. Northfield, no, it does not. So since Northfield came out in 2004, so we're talking 15 years, and there's been occasions where the Texas Supreme Court could have adopted. But you agree it hasn't expressly recognized, well, maybe recognized is the wrong verb, it hasn't expressly adopted or applied Northfield, correct? I will agree that it has not expressly applied. I think that it has cited it. It has cited it, you say approvingly, sort of tacitly condoning, but not embracing. And it just seems unclear. It doesn't seem unclear at all, given what I've seen from other panels of this court. The court has said that this decision has been made and that this has been adopted. Are you talking about these unpublished cases? I am referring to the unpublished opinions, Your Honor. What about the potential argument that it doesn't meet the exception because it doesn't meet the first prong of when the exception would apply if we do have an exception? I think that it does meet the first prong, Your Honor, because it does address the extrinsic evidence is going to a fundamental coverage issue. The coverage issue is whether or not the policy applies at all, and it's not touching on the merits of the underlying lawsuit. But the accident, I mean, the coverage-triggering occurrence, I should probably say more technically, as stated in the complaint, could state a potential claim under the policy. No, Your Honor, I don't think it does. The facts that are alleged leave open where the accident took place, and so the question of whether there is coverage is vital. But for a physical accident taking place, none of the negligence that is alleged would have triggered coverage, would have triggered a bodily injury. It is the bodily injury that I believe actually determines where the accident occurred and whether or not coverage exists. And what authority do you cite for that? The main authority that I cite is the RENA decision, which talks about an auto accident where negligent training of a driver occurred in the United States. Negligent supervision had occurred in the United States, but the driver in question had driven off into Mexico and the accident took place in Mexico. But for the physical injuries of that accident, there was no loss, according to that case. It was the physical injuries that determined the place of the accident that determined whether or not coverage happened. That is, I believe, the same situation here by parallel. If we were to certify a question, what is the question that you believe should be certified? Your Honor, I do not believe a question should be certified. Yes, sir, and we understand that. You made that really clear, and I appreciate that. But if a question was to be certified, I think that the question would be—I'm sorry. I think that the question must be, then, does the narrow exception to the eight corners rule discussed in, I would use star text, apply in Texas? What about is there a narrow exception to the eight corners rule? Quite possibly, yes, Your Honor. Okay, no, you're on the fly here, so that's okay. Okay. But ultimately, I believe that this matter has been eerie decided, which I have said previously. Yes, sir. I apologize for repeating. No, it's your job. Anything else? No, Your Honor, nothing else. Thank you. Thank you. That's the same question for you. If we do certify, what's the question? Interestingly enough, Your Honor, what has been clarified is what the exception would be. And State Farm loses here because we know what the exception would be, and they can't satisfy those standards. The only question that theoretically could be certified but would not make a difference here is whether or not the Texas Supreme Court is finally ready to make clear we're not going to recognize that exception. Is there an exception to the eight corners rule? That's correct. Okay. And so what I'd like to do in my rebuttal time is to make clear why, if the Texas Supreme Court were to adopt this exception, State Farm is still going to lose. The exception articulated in Northfield, putative exception articulated in Northfield, articulated in Zurich, reads as follows. Quote, when it is initially impossible to discern whether coverage is potentially implicated and when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap the merits of or engage the truth or falsity of any facts alleged in the underlying case. And I note the end in that passage is italicized in the original. I spoke in my opening as to why it is not impossible to determine whether or not coverage potentially is implicated. So what I'd like to talk about now is why on that second prong State Farm still is not going to prevail with respect to whether or not their coverage position in this case touches upon or calls into question the truth or the falsity of the state court petition. And the source that I will turn to to make the point that clearly their coverage provision in this lawsuit touches upon the underlying merits is State Farm's own response brief. At page 16, footnote 14, State Farm writes as follows. Ironically, in an effort to plead the suit into coverage, Ms. Mills has pleaded herself out of a negligence cause of action as she has not alleged any facts regarding the cause in fact of Jayton's injuries. I couldn't disagree anymore with State Farm's conclusion, but I credit it for admitting it unapologetically is taking a position in this coverage litigation that calls into question the substantive merits of the underlying cause of action. Whether or not the Texas Supreme Court or this court in turn does in fact adopt the putative exception, there's no question as to the criteria for the exception. And State Farm has not satisfied nor attempted to satisfy either of those two criteria. Do we have to have the bodily injury, though, under the Rayna case that he's cited? The case is misguided because he talks about the case without regard to the actual policy terms that control. Here, yes, there does have to be bodily injury, but the coverage triggering criteria is that the conduct has to result in. There's no proximity limitation or temporal limitation. In fact, counsel mentioned the but-for analysis. It applies both ways. But-for, the Richards on their property allowing Jayton Mills to operate the ATV, allowing Jayton Mills to operate the ATV without a seat belt, without a helmet, et cetera, et cetera, et cetera, the injuries would not have resulted. So all opposing counsel has discussed is doubt as to whether or not the activity will or would not fall within coverage. Is there some sort of temporal assumption made? Like what if it was they bought him this thing and invited him over? Would that be enough if that was what was pled? They brought this thing? They bought this ATV and then invited him over. But there was no injury? No. Yeah, I mean, and then he's injured. But we don't know where he's injured. That perhaps may be different because under this personal liability policy, we are looking at their conduct as defined, for instance, by terms such as accident. They invited him over specifically to ride this. There's nothing inherently negligent about inviting someone over to ride an ATV. What's critical with respect to the factor allegations here, if taken as true, is that we're alleging the manner in which they authorized him, failed to supervise him, et cetera, et cetera, et cetera, to operate the ATV, all while on their property is a liability triggering conduct. So but for those poor choices, there would not be a situation that resulted in bodily injury. We therefore think that the court erred by ruling in favor of State Farm and request the court render an appellant's favor. Thank you. We appreciate these thoughtful arguments.